Nouveau and the next case on the calendar is 21-2019 Bartlett v. Dr. Basile. Mr. Delocle, your honors. May it please the court, counsel, your honors. The question in this case is whether a central bank lacks immunity under the Foreign Sovereign Immunities Act, where there is no exception, solely because the central bank became real party and interest to the suit while it was pending. The district court's fundamental mistake was over reading Dole Food to control what is a fundamentally different question presented by this case. Dole Food considered agency or instrumentality status under section 1603 in the context of a dispute whether it should be considered at the time of filing or at the time of the alleged wrongdoing. Dole Foods never considered the question presented by this case, which is what happens after the time of filing if a state becomes a real party in interest to the suit. We agree with Dole Foods that agency or instrumentality status does need to be assessed at the time of filing, but it also needs to be assessed when there is an event of jurisdictional significance, in this case the liquidation of Jamal Trust Bank by the Central Bank of Lebanon due to its insolvency. Can I ask what specifically you would have a say about the Dole Foods statement about the time of filing, that it was dicta? I wouldn't ask the court to say that it was dicta. I would ask the court to say that Dole Foods was decided against a backdrop that the court needs to have jurisdiction over the case at all times. That means jurisdiction at the time it's filed, which Dole Foods stresses, as well as jurisdiction when a later event that could impact that jurisdiction, such as the Central Bank becoming a real party at interest, occurs. I don't think that the court needs to even file. I'm sorry, but if your logic holds, wouldn't that undermine the Dole Foods ruling on diversity? I mean, under your theory that we have to have subject matter jurisdiction at all times, you're fine, but you're saying that when a jurisdictional event happens, why in your view in Dole Foods, when the change in diversity happens, it doesn't trigger any change in the FSIA? How does that not map onto this case? In Dole Foods, the dispute wasn't about anything that happened while the case was pending. Dole Foods concerned a defendant, Dole Food, implemented several Israeli companies that were at one point second tier subsidiaries. It was before. So you're saying that Dole Foods would have come out differently if the acquisition or they had been acquired by the Israeli government afterwards? Dole Foods may have come out, the reasoning of Dole Foods would need to be different. I'm not sure that the outcome of Dole Foods would change. In Dole Foods, there may well have been an applicable commercial activity exception. No, no, put aside that. Yeah. Just say they had been reacquired. Potentially, it would have changed if they had been reacquired, yes. But the court didn't consider that issue. And I think another wrinkle that the court needs to understand and why it is Central Bank is a true real party and interest in here is, this wasn't a situation where the Central Bank acquired Jamal Trust Bank. Jamal Trust Bank was insolvent and the Central Bank is overseeing the liquidation. That involved assuming all the assets of Jamal Trust Bank as well as putting 162 billion Lebanese lira in to cover the shortfall that the Jamal Trust Bank had to its depositors. If we could go back to Dole Foods, I'm still struggling with sort of what we would say about it in an opinion if we were to try. If you would agree with your argument. Sure. Because you've given us a lot of reasons, but the thrust of it seems to be that the time of filing rule applies when it's in favor of sovereign immunity, but that's one way and not other ways. Is that a fair way to reconcile that? I don't think that's quite what I'm saying. If I were to write the opinion, Your Honor, I would say section 1604 of the Foreign Sovereign Immunities Act says that a foreign state shall be immune from jurisdiction of the United States courts unless one of the exceptions in 1605 through 1607 applies. No party alleges and the plaintiffs in their brief full-length appeal brief didn't. I'm not asking about the whole opinion. Sure. I'm asking just about Dole Foods. Okay. What do I say about what we say about Dole Foods? Dole Foods did not consider the situation where a central bank, a state organ, became a real party of interest after the suit. In light of the divestiture of jurisdiction present in section 1604, we must consider the applicability of the exemptions at that time as well as at the time it's filed. Should we worry, if we adopted your view, that it is subject to manipulation? That is to say, an important bank gets protection by having the state increase its shareholding to 51%. And then they come in and say, well, you have no subject matter jurisdiction. Goodbye. I don't believe so, Your Honor. I think this really is a unique situation. And I would direct you to the decisions in Wolfe and Caleo from the mid-1980s, which considered a somewhat similar situation where Mexico devalued its currency and United States citizens who had certificates of deposits from Mexican banks sued and alleged that it was either a securities violation or a contractual violation. And what the Fifth and the Ninth Circuit did in those cases was say, it's an event of, essentially, we need to consider whether or not the FSIA allows this suit where there was a post-suit nationalization. And the court looked and said, well, there's a commercial activity there. One of the exceptions in 1605 through 1607 applies. And so that suit can be maintained. And so I think in the mind-run case where you're concerned, well, is a central bank going to do a solid for a favored commercial entity? You probably don't end up in a different place. But still, in that situation, you would, mid-suit, stop everything and then have to make an assessment as to whether one of the FSIA exceptions applies. I believe you would, Your Honor. And if it didn't, then it just gets tossed. Correct. Post-filing developments in acquisition by a foreign sovereign could result in dismissal of litigation. It's potentially the case, Your Honor. And then if the sovereign divested itself and dipped down to 47% after the dismissal, what, when people can come back and re-sue them? Possibly, Your Honor. Maybe in the meantime the statute of limitations is run? I mean, again, we're spinning up the possibility for manipulation, right? If a country wants to save one of its favorite, you know, favored, homegrown businesses, right? I mean, it could do that. It could own it for the period of time, get it dismissed, and then a couple years later drop down to 48% ownership. I agree that's a possibility, but I have two reasons why I think that possibility shouldn't prevent a decision in my client's favor. First, I think in the vast majority of cases, you probably would have an exception under Section 1605, likely the commercial activity exception to apply. And the fact that this case presents what I think truly is a novel argument. We've identified no case that is in this precise posture in the Federal Reporter, and as close to this since the mid-1980s, suggests it's an unlikely occurrence. But second, this Court's decision in Aurelius Capital Partners v. Argentina, which addresses not the jurisdictional aspects of the Foreign Sovereign Immunities Act, but the writ of execution aspect, allows states where an application for a writ has been filed to remove property from a commercial activity to avoid attachment. And that cuts against a finding that the plain language and the purposes of the FSIA would prevent you from a ruling in my favor, even if there was some potential hypothetical concern about manipulation. I see that the red light is on. If you have further questions, I'm happy to answer them. Thank you. You have reserved some time for comment. Mr. Jardine? Good morning. May it please the Court, I'm Michael Jardine for plaintiffs. Appellants here, JTB and Dr. Baseri's arguments go to rather extreme lengths to avoid the straightforward holding of dull food. Quote, instrumentality status is determined at the time of the filing of the complaint. JTB, the bank, was undeniably private at the time we filed the complaint against it. So they've made several arguments. Just to run through them quickly, the first, they seem to have abandoned it here, but in their briefs, they argue strongly that that sentence in dull food was dicta. And in face of the many cases referenced, including in the circuit, those are all dicta too. Well, the argument is that you could view that it's not as much as dicta, it's just comparing that the holding in dull foods is not comparing it to the situation we have here, where a party is acquired later, but just saying compared to a previous point in time, right? The time of the alleged misconduct, right? So if those were the two comparison points, the two choices that were being faced in dull foods, and the court selected the latter, if one accepts that interpretation of what dull foods was talking about, you'd say, well, nobody even talked about what might happen if things changed afterwards, right? Sure, although I think the line in dull foods was clear. This court in Abrams later said that dull foods was holding unequivocally that an entity's status as an instrumentality of a foreign state should be determined at the time of the filing of the complaint without an asterisk saying or later. And that would track, in your argument, that tracks how we deal with diverse jurisdictions. Yes, so on that point, my friend here said the court must retain jurisdiction at all times, suggesting that a later change in arrangement would destroy subject matter jurisdiction. The Supreme Court in Grupo Dataflex said that is not true. So, for instance, in that case, you had a partnership with Texan and Mexican members of the partnership. They had sued Mexican entities. And to get rid of the diversity problem post-filing of suit, they dropped the Mexican members of the partnership. The Supreme Court held that the fact that the suit wouldn't work post that event doesn't matter. It's a time of filing that matters. The court held the same thing here in European Community v. RGR Nabisco. European Community was essentially incorporated and merged itself into the European Union post-filing. And this court held that that post-filing change, again, doesn't matter. It's a state of things at the time of filing. So there's the pre- and post-issue, but there's also, I think, the issue that I'm talking about is that dull foods operated in favor of sovereign immunity. And that's sort of the point of the FSIA. And here it's working in the opposite direction. And so can you address that? It seems like you are applying the statement about the time of filing from dull foods to a different context, where we're actually now doing something that would seem to be contrary to the purpose of the FSIA, bringing a foreign sovereign organ of instrumentality into the U.S. court. Well, there's no reason why that would be any different than the other arrangement. The FSIA doesn't hold that sovereignty is inviolate, as the exceptions, such as the commercial activity exception that we discussed here. Dull food itself says, let me read you the line here. It says, the FSIA is designed, quote, sorry, to give foreign states, quote, some protection from the inconvenience of suit as a gesture of comedy. The D.C. Circuit and TIG Insurance v. Argentina said, quote, Congress enacted the FSIA to protect the rights of both foreign states and litigants in United States courts. I don't think anything suggests that dull foods, again, had a sub silentio exception that says if it doesn't benefit a foreign state, then we didn't mean the time of filing rule. Do I understand that what's at stake here is the $8 million that the bank has or had on deposit in New York? That's a property that they've admitted to having in New York. Yes. But I wouldn't say, for instance, that standing relies on that property being identified. Not that standing is an argument they made here. If you were to prevail, you would have a claim against other assets of the bank, which are held by the Central Bank of Lebanon, correct? Possibly. When you have a redressability problem, I mean, you would have to go to Lebanon and open the bank? I don't think so. Well, they raised redressability in their motion to dismiss below. The district court rejected it, and they chose not to appeal on that ground. But what the district court held correctly in that case was that it's not about identifying assets in advance. Although, yes, we have identified the $8 million in New York. It's about whether we have asked for a type of relief that would match what the complaint is for. And it's a complaint for money damages, and we've identified- If there was nothing on deposit in New York, and you got a judgment of, say, $100 million, wouldn't it be embarrassing for the court that you get a judgment that you can't collect on? No. The redressability case law is clear that it's not the court's obligation to give judgments only when it thinks it can be satisfied. How that gets satisfied is, frankly, our problem. It's the role of Rule 69 post-judgment discovery, et cetera. On the theory that maybe you can get anything from Lebanon, maybe you can, but maybe you could find their assets elsewhere. You could find them in Paris or London or Tokyo, and then good luck to you. Right, exactly. Yeah, unfortunately, a common problem for plaintiffs. How am I doing? Okay, so the other arguments that they have raised in their briefs, no less valid. They raised the argument that the time of finding rule applies only to diversity in removed cases. Their case law on that is particularly notable because they rely, in part, on cases that the circuit that issued them took back because of dull food. I think that made that clear. They've argued that the treatment for organs, as used under the FSIA, is different than majority-owned corporations. That argument has been soundly rejected, and they don't have a case that supports it otherwise. They argue that sort of vague purposes of the FSIA should allow this court to rewrite dull food. We've addressed that. And then they've analogized to other immunities that they'd rather this court look to, and I just note there that the Supreme Court in dull food addressed the same issue, where the Dead Sea Companies, quote, urged us to administer the FSIA like other status-based immunities. We think the comparison is inept. Have you argued or are you arguing that the delay in the invocation of sovereign immunity is a waiver of it or constitutes latches in any way? Is that an issue here? We argued that below in resisting substitution and intervention, saying that this came far too late. The district court disagreed, and we are not pursuing that further. So Dr. Basiris intervened in the case, and that's fine. That's how the case will proceed. I'm happy with my time left to quickly, if the court is interested, address substitution. This is a second issue that the appellants have raised. Here, the district court held that the primary issue in reviewing substitution is whether it would expedite or simplify the proceedings. It found that substitution here would not. The appellants' only argument is that the district court should have made a more definitive finding as to a transfer of interest before ruling on substitution. I think it's fairly clear the district court was assuming arguendo that the interest had transferred. In fact, the district court found that some interest had transferred in ordering the intervention. But more to the point, as this court held in In Re Chalisani, there is no substitution where an interest hasn't transferred. So the district court presumes the interest, or some interest, has transferred, and then finds, nonetheless, that the substitution here would not expedite or simplify this case and ordered intervention instead. If there's nothing else from the court, that's my time. Thank you. Thank you, counsel. Thank you. Very briefly, I'd like to address a few of the points my colleague has made. On the Abrams case he references, that was another time of wrongdoing versus time of filing dispute. It does not address the situation that we have here for the same reason dull food does not. On the European community versus RGR Nabisco case, we think that can be read consistently with our theory. That was actually a diversity case brought by the European community against U.S. citizens. The European Union later succeeded the European community. But if the European community did not qualify as a foreign state at the time of filing, it would have been a void ab initio lawsuit. That's the saying that there needs to be jurisdiction throughout. Finally, as to your point about redressability, Judge Jacobs, there is something mighty odd and we believe inconsistent with the purposes of the FSIA to allow the plaintiff to obtain a judgment that would theoretically allow it to attach or collect against the assets of the central bank where no FSIA exception occurs. The time of filing rule does have the least force in federal question cases and faced with the statute of the FSIA, section 1604, shall be immune from the jurisdiction of the U.S. courts without an exemption, there's no reason to apply it here to this unique situation. Thank you for your time, your honors. Thank you, counsel. Thank you both. We'll take the case under advisory.